```
                    UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )    Chapter 7
PAULINE TYER,                   )
                                )    Bankruptcy No. 06-01507
      Debtor.                   )
                                )
_____ )
PAULINE TYER,                   )
                                )    Adversary No. 07-09052
      Plaintiff,                )
                                )
vs.                             )
                                )
SLM CORPORATION,                )
                                )
      Defendant,                )
                                )
EDUCATIONAL CREDIT              )
MANAGEMENT CORP.,               )
                                )
      Intervenor/Defendant.     )
```

**ORDER RE: DEBTOR'S COMPLAINT TO DETERMINE
DISCHARGEABILITY OF STUDENT LOANS**

This matter came before the undersigned for trial on February 20, 2008. Debtor Pauline Tyer appeared with Attorney Steve Klesner. Intervenor/Defendant Educational Credit Management Corp. ("ECMC") was represented by Attorney Matthew Cronin. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Debtor asserts she has insufficient income to repay student loans and requests an undue hardship discharge under § 523(a)(8). ECMC asserts Debtor is able to pay the student loan without undue hardship.

**FINDINGS OF FACT**

Debtor owes ECMC more than $120,000 in student loans. This amount arises from a consolidated student loan she received in 1995 in the original amount of approximately $50,000. This loan had a 25-year term and accrues interest at 8% annually. Debtor incurred the loans to finance undergraduate and graduate studies. She testified that she filed her bankruptcy petition in order to discharge her student loans. The only other debt listed is credit card debt owed to the University of Iowa Comm. Credit Union of $2,697 which she has reaffirmed.

Prior to returning to college in the mid-1980s, Debtor was a homemaker, raising a child.  She worked in a clerical capacity at Northwest Michigan College and took basic courses.  After a divorce in 1983, Debtor decided to complete her bachelor's degree.  She received a B.A. in theater, cum laude, from Michigan State in 1987 when she was 43 years old.  After working for a time and searching for a graduate school, Debtor began attending the University of Iowa in 1991, where she was also a teacher's assistant.  She received her master's in theater in 1994 hoping to teach theater at the college level.  When Debtor could not find a job in theater, she started working at ACT where she remains employed today.  She is now 63 years old.  She has no significant health concerns.  She is divorced and lives alone.

Debtor has annual gross earnings of $37,500.  Her net biweekly checks are $900.  Debtor also receives $180 per month from a Michigan retirement account, which she deposits into an IRA account.  She contributes to a TIAA-CREF retirement account.  The IRA balance is approximately $9,000 or $10,000.  The TIAA-CREF account value is more than $40,000.  The amounts set out in Debtor's answer to Interrogatory No. 22 (Exhibit 1) are more accurate regarding her present income than amounts found in Debtor's Schedule I filed with her Bankruptcy Petition.

Debtor's monthly expenses appear reasonable.  Pursuant to Debtor's testimony and answer to Interrogatory No. 22 in Exhibit 1, Debtor's monthly expenses are approximately $2,027.33.  Included in this amount is $350 for the future purchase of an automobile.  Debtor currently drives a 1992 Mercury Topaz and has no car payments.  The Court has excluded Debtor's cigarette expense of $100 which Debtor testified she no longer has.  Debtor's monthly net income and net expenses are both approximately $2,000.

Interest is accruing on the student loan debt at approximately $767 per month.  The payment alternatives outlined by ECMC in Exhibit A range from $929.94 for 25 years to $371.85 under an Income Contingent Repayment Plan for 25 years, after which the remaining balance is discharged, with possible tax consequences.  Debtor testified that she cannot afford to make even the ICRP payments now while she continues to be employed.  Debtor will likely have less income after she retires in a few years.  She will be eligible for Social Security payments of $1,014 at age 66, but does not know how much she will received from TIAA-CREF on retirement.  Her monthly retirement payments of $180 from Michigan will end in about seven years.

Debtor made monthly payments of $50 for a short time after the consolidated loan became due.  As shown in Exhibit I, Debtor requested and received deferments or forbearances for several years based on her inability to pay.  She has remained in contact

with her student loan creditors every year and sent them the required documentation.

## CONCLUSIONS OF LAW

Student loan debts are not discharged in bankruptcy "unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Debtor must prove the existence of undue hardship by a preponderance of the evidence. In re Cheney, 280 B.R. 648, 659 (N.D. Iowa 2002).

"Undue hardship" requires examination of the totality of circumstances. In re Reynolds, 425 F.3d 526, 532 (8th Cir. 2005).

> In evaluating the totality-of-the-circumstances, our bankruptcy . . . courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt - while still allowing for a minimal standard of living - then the debt should not be discharged.

In re Long, 322 F.3d 549, 554 (8th Cir. 2003) (citations omitted). The first factor "will require a special consideration of the debtor's present employment and financial situation - including assets, expenses, and earnings - along with the prospect of future changes - positive or adverse - in the debtor's financial position." Id.; In re Nelson, 343 B.R. 919, 922 (Bankr. S.D. Iowa 2006) (Kilburg, J.).

The second factor, concerning debtor's living expenses, requires a determination of what expenses are "reasonable and necessary." In re Long, 292 B.R. 635, 638 (B.A.P. 8th Cir. 2003) (on remand from 8th Circuit). To be reasonable and necessary, expenses must be modest and commensurate with the debtor's resources. In re Meling, 263 B.R. 275, 279 (Bankr. N.D. Iowa 2001), aff'd, 2002 WL 32107248 (N.D. Iowa 2002).

Other relevant factors and circumstances of each individual bankruptcy case may include: (1) the debtor's good faith effort to repay the loan, or a debtor's bad faith in non-repayment, (2) whether the debtor has made a good faith effort to obtain employment, maximize income, and minimize expenses, and (3) whether the debtor is suffering truly severe, even uniquely

3

difficult financial circumstances, not merely severe financial difficulty. Faktor v. United States, 306 B.R. 256, 264 (Bankr. N.D. Iowa 2004); In re Wilson, 270 B.R. 290, 294 (Bankr. N.D. Iowa 2001). The availability of an "Income Contingent Repayment Plan" ("ICRP") is but one factor to be considered. In re Lee, 352 B.R. 91, 95 (B.A.P. 8th Cir. 2006).

The age of the debtor is also a factor the Court may take into consideration under § 523(a)(8). In re Jesperson, 366 B.R. 908, 916 (Bankr. D. Minn. 2007) (O'Brien, J.). The mere fact that a debtor is near normal retirement age, however, does not mean that the debt should be discharged. In re Winsborough, 341 B.R. 14, 19 (Bankr. W.D. Mo. 2006) (Dow, J.). Circumstances that mitigate the effect of age as an indicator of undue hardship include the age of the debtor at the time the loans were originated or consolidated and the extent of forbearances or deferments. In re Houshmand, 320 B.R. 917, 921 (Bankr. W.D. Mo. 2004) (Dow, J.). For example, the court in Houshmand stated:

> [Debtor] requested forbearances or deferments for a total period of approximately 76 months (more than six years) which requests were honored by the lender. Debtor should therefore have understood that the effect of those requests would be to either extend the length of the repayment period or increase the amount to be paid, including the amount of the required monthly payments, or both. As a result of having requested and received these deferments, Debtor might reasonably expect therefore to have been required to pay on this debt until sometime in his early 70s. It does not therefore seem unreasonable to suggest that Debtor should be required to continue to pay on his consolidated student loan for some period of time after his eligibility for retirement and thus to continue to work in order to generate the income necessary to make those payments.

Id. at 921-22.

**ANALYSIS**

Pursuant to the record as a whole and based on the foregoing applicable legal principles, the Court concludes that Debtor has failed to prove by a preponderance of the evidence that excepting her student loan debt from discharge will impose an undue hardship on her. Debtor earned $37,500 in 2007 and has worked for the same employer for many years. The record fails to accurately predict what Debtor's retirement income will be, but Debtor has several working years left before retiring and her earnings will likely continue to modestly improve prior to retirement.

4

Debtor's expenses are reasonable. She has no other debt except for one credit card with her credit union. While Debtor received deferments allowing her not to make payments on her consolidated student loan, she has accumulated more than $50,000 in retirement accounts. The Court concludes that there is sufficient latitude in Debtor's budget to allow her to make some payments on her student loan.

When Debtor consolidated her student loans in 1995 with a 25-year term, she was 51 years old. Thus, had Debtor made regular payments of between $337.26 and $454.94, the loan would have been paid off when Debtor was about 76 years old. Debtor is now 63 and anticipates retiring when she is 67 or 68. She has no health problems or dependents. She asked for and receive deferments and forbearances from her student loan creditors for several years. These facts mitigate against the effect of Debtor's age as an indicator of undue hardship. Debtor has not yet reached retirement age.

The Court recognizes that the amount of debt in this case is substantial. Clearly, the inability to discharge this debt has an impact upon Debtor. Nevertheless, the legal test for dischargeability is set by law and the threshold has intentionally been set very high. As such, the Court concludes that Debtor is not suffering truly severe or uniquely difficult financial circumstances, as those terms are legally defined, which would entitle her to an undue hardship discharge of her student loans.

**WHEREFORE**, Debtor's Complaint to Determine Dischargeability of Student Loans is DENIED.

**FURTHER**, the student loan debt owed to Education Credit Management Corp. is excepted from discharge under § 523(a)(8).

DATED AND ENTERED: March 24, 2008

_Paul J. Kilburg_
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE